# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JOHN MORLEY, Individually and On Behalf of All Others Similarly Situated, | CASE NO: 4:15-cv-01809 COLLECTIVE ACTION |
| v. | JUDGE DAVID HITTNER |
| NINE ENERGY SERVICES, LLC. | |

———————————————————

## MORLEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO NINE'S AFFIRMATIVE DEFENSES

———————————————————

Respectfully submitted,

**BRUCKNER BURCH PLLC**
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    S.D. Tex. No. 21615
    Matthew S. Parmet
    Texas Bar No. 24069719
    S.D. Tex. No. 1076547
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:  (713) 877-8788
Telecopier:  (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

**FIBICH, LEEBRON, COPELAND, BRIGGS & JOSEPHSON**
    Michael A. Josephson
    Texas Bar No. 24014780
    S.D. Tex. No. 27157
    Jessica M. Bresler
    Texas Bar No. 24090008
    S.D. Tex. No. 2459648
1150 Bissonnet
Houston, Texas 77005
Telephone:  (713) 751-0025
Telecopier:  (713) 751-0030
mjosephson@fibichlaw.com
jbresler@fibichlaw.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

# TABLE OF CONTENTS

A.    SUMMARY ................................................................................................ 1

B.    STANDARD OF REVIEW ....................................................................... 1

    1.    Applicable summary judgment standard. ............................................ 1

C.    ARGUMENT & AUTHORITIES ............................................................ 1

    1.    Nine's good faith defense fails as a matter of law. ........................... 1

        1.1.    Nine carries the burden of proof on its good faith defense. .................... 2

        1.2.    To avoid liquidated damages, Nine must show both subjective good faith and an objectively reasonable basis for the way it paid Morley. ................. 2

        1.3.    Nine cannot claim apathetic ignorance of the FLSA as a defense. ........... 3

        1.4.    The good faith defense is subject to summary disposition. ...................... 4

    2.    The evidence shows Nine is not entitled to the good faith defense. .............. 4

        2.1.    Nine has no training or knowledge on the FLSA. ...................................... 4

    3.    Nine has failed to raise a genuine dispute regarding its highly compensated or administrative exemptions. ...................................................................... 6

        3.1.    Exemptions are construed narrowly against the employer. ....................... 6

        3.2.    Blue collar workers are not eligible for any white collar exemptions. ....... 7

        3.3.    Morley is a blue collar employee. ................................................................ 7

    4.    Nine cannot meet its burden under the administrative exemption. ............... 8

        4.1.    Morley's primary duties related to production. ........................................... 9

        4.2.    Morley did not exercise discretion and independent judgment with respect to matters of significance. .............................................................................. 12

    5.    Nine cannot sustain its highly compensated exemption defense. .................. 15

        5.1.    Morley's primary duties did not include office or non-manual work. ...... 15

        5.2.    Morley did not perform any duties of an administrative employee. ......... 16

        5.3.    Morley did not fulfil the duties of an executive employee. ....................... 17

        5.4.    Morley does not qualify for the professional exemption. .......................... 18

D.    CONCLUSION ....................................................................................... 20

**TABLE OF EXHIBITS**

| Ex. | Document |
|-----|----------|
| A | Deposition of Rickey Green (Nine Vice President), Apr. 28, 2016 |
| B | Deposition of Rory Barbot (Nine Regional Manager), Apr. 27, 2016 |
| C | Deposition of Robin Peterson (Nine District Manager), Apr. 27, 2016 |
| D | Deposition of John Morley, Apr. 26, 2016 |
| E | Position Description for Field Technician, Apr. 7, 2015 |
| F | Authenticating Decl. of Matthew S. Parmet, Aug. 1, 2016 |

TABLE OF AUTHORITIES

## Cases

*Arasimowicz v. All Panel Sys., LLC*, 948 F.Supp.2d 211 (D. Conn. 2013) ........................ 19

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) .................................................. 6

*Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464 (5th Cir. 1979) ..................... 3

*Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259 (5th Cir.1998) ............................... 2, 3

*Bolick v. Mgmt. by Skylane, LLC*, No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct. 14, 2008) ................................................................................................... 4

*Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090 (5th Cir. 1973) .................................... 6

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................. 2

*Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 443 (E.D. Tex. 2004) .................... 6

*Clark v.  Centene Co. of  Tex., L.P.*, No. 15-50606, --- Fed.Appx. ----, 2016 WL 3974099 (5th Cir. Jul. 22, 2016) ............................................................. 13, 19

*Clark v. Centene Co. of Texas, L.P.*, 44 F.Supp.3d 674 (W.D. Tex. 2014) ........................... 19

*Dalheim v. KDFW-TV*, 712 F. Supp. 533, 536 (N.D. Tex. 1989) ........................... 2, 10, 13

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) ................................. 10

*Debejian v. Atlantic Testing Labs., Ltd.*, 64 F.Supp.2d, 85 (N.D.N.Y. 1999) ..................... 19

*Diller v. Sunoco Partners, L.L.C.*, No. 4:05-cv-03693, Doc. 74 (S.D. Tex. Aug. 9, 2007) (Smith, Mag.), *adopted* Doc. 76 (Hittner, J.) ........................................... 11, 15

*Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562 (11th Cir. 1991) ............................... 19

*Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir.1999) .................................... 6

*Karr v. City of Beaumont*, 950 F. Supp. 1317 (E.D. Tex. 1997) .................................... 3

*LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260 (5th Cir. 1986) ................................ 3

*Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220 (5th Cir. 1991) ....................................... 3

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000) .................... 9

*Mireles v. Frio Foods*, 899 F.2d 1407 (5th Cir. 1990) ........................................... 3

*Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018 (5th Cir. 1993) ........................... 2

*Reich v. Tiller Helicopter Svcs., Inc.*, 8 F.3d 1018 (5th Cir. 1993) ............................ 2

*Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496 (5th Cir. 1999) ................................ 1

*Singer v. City of Waco, Tex.*, 324 F.3d 813 (5th Cir. 2003) ..................................... 2

*Solis v. Hooglands Nursery, L.L.C.*, 372 Fed.Appx. 528 (5th Cir. 2010)..............................4

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715 (5th Cir. 1995) ..................................1

*Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001)......................................20

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986) ....................4

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ................................19

*Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed.Appx. 349 (5th Cir. 2015)...................12

## Statutes

29 U.S.C. § 213........................................................................................................8, 18

29 U.S.C. § 216 ................................................................................................................2

29 U.S.C. § 260................................................................................................................2, 3

## Other Authorities

69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) .......................................................10

69 Fed. Reg. 22150 (Apr. 23, 2004) ...................................................................20

U.S. DEPT. OF LAB., WAGE & HR. DIV., Adm'r Interp. No. 2010-1 (Mar. 24, 2010) .....10

U.S. DEPT. OF LAB., Wage & Hr. Op. Letter No. FLSA2005-21 (Aug. 19, 2005)..........11

U.S. DEPT. OF LABOR, Op. Ltr. FLSA2008-10NA (Jun. 9, 2008)....................................20

## Regulations

29 C.F.R. § 541.100 .......................................................................................17

29 C.F.R. § 541.200 .........................................................................................8

29 C.F.R. § 541.201 ........................................................................................9, 10

29 C.F.R. § 541.202 .......................................................................................12, 13

29 C.F.R. § 541.3.............................................................................................7

29 C.F.R. § 541.300 .......................................................................................18

29 C.F.R. § 541.301 ......................................................................................18, 19

29 C.F.R. § 541.601 .........................................................................................7

29 C.F.R. § 541.601 ......................................................................................15, 16

29 C.F.R. § 541.700 .........................................................................................9

29 C.F.R. § 790.22 .........................................................................................2

**A.    SUMMARY**

John Morley, a blue collar tool hand, performed manual, non-exempt work extracting oil from rigs for Nine Energy Service, LLC (Nine). Nine paid Morley a salary and day bonuses, but did not pay him any overtime. This payment scheme violates the Fair Labor Standards Act (FLSA).

Nine has no evidence to support its good faith, administrative exemption, highly compensated exemption affirmative defenses. Indeed, the evidence shows all three affirmative defenses fail. Because no facts are in material dispute, Morley is entitled to summary judgment.

**B.    STANDARD OF REVIEW**

    **1.    Applicable summary judgment standard.**

To obtain summary judgment on a matter on which the non-movant would bear the burden of proof, the movant may merely point out the absence of evidence and thereby shift the burden of proof to the non-movant to come forward with competent summary judgment evidence creating a material question of fact. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995). To avoid summary judgment, the non-movant must respond by setting forth specific facts indicating a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

**C.    ARGUMENT & AUTHORITIES**

    **1.    Nine's good faith defense fails as a matter of law.**

The FLSA's liquidated damage provision provides compensation for the

employer's failure to pay workers on time. *See* 29 C.F.R. § 790.22(a) n.137. The FLSA presumes employees are entitled to an additional amount equal to their actual damages as liquidated damages. *See* 29 U.S.C. § 216(b); *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993); *see also Dalheim v. KDFW-TV*, 712 F. Supp. 533, 536 (N.D. Tex. 1989) ("The burden [of the good faith defense] is difficult to meet; double damages are the norm, single damages the exception."). These damages are compensatory, not punitive. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("[The FLSA's] liquidated damages provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.").

### 1.1.  Nine carries the burden of proof on its good faith defense.

The employer "faces a 'substantial burden' of establishing good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003) (citing *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir.1998)). The district court's decision on liquidated damages is reviewed under an abuse of discretion standard. *Id.*

### 1.2.  To avoid liquidated damages, Nine must show both subjective good faith and an objectively reasonable basis for the way it paid Morley.

A court can reduce or deny liquidated damages only if the employer shows it acted in good faith **and** had reasonable grounds not to pay its employees. 29 U.S.C. § 260; *Reich v. Tiller Helicopter Svcs., Inc.*, 8 F.3d 1018, 1031 (5th Cir. 1993). But if the

employer fails to meet its burden to show **both** subjective good-faith and objectively reasonable behavior, "the duty of the court to award liquidated damages in an amount equal to the unpaid [overtime] [is] ministerial, not discretionary." *Mireles v. Frio Foods*, 899 F.2d 1407, 1414 (5th Cir. 1990). And even if the employer meets its burden, the court still retains discretion to award liquidated damages. 29 U.S.C. § 260; *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 227 (5th Cir. 1991).

### 1.3. Nine cannot claim apathetic ignorance of the FLSA as a defense.

"The good faith defense requires plain and substantial evidence of at least an honest intention to ascertain the requirements of the Act and comply with those requirements." Schneider & Stine, WAGE AND HOUR LAW: COMPLIANCE & PRAC. II, § 21:03. So to be eligible for a reduction in liquidated damages, the employer must show it purposefully "engaged in the acts proven to be violations, but did so under a mistaken, although reasonable belief, that its acts were in conformity with the law." *Bernard*, 154 F.3d at 267. An employer cannot meet this burden by "professing ignorance" of the FLSA's requirements. *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1262 (5th Cir. 1986); *see also Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979) ("[B]usinessmen cannot claim good faith when they blindly operate a business without making any investigation as to … the labor laws. Apathetic ignorance is never the basis of a reasonable belief."). Rather, an employer has a "duty to investigate potential liability under the FLSA." *Barcellona*, 597 F.2d at 468-69; *Karr v. City of Beaumont*, 950 F. Supp. 1317, 1325-26 (E.D. Tex. 1997). Thus, "'a good heart but an empty head does not

produce a defense'" to liquidated damages. *Bolick v. Mgmt. by Skylane, LLC*, No. H-07-2261, 2008 WL 4589961, at *2 (S.D. Tex. Oct. 14, 2008) (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986)).

### 1.4.    The good faith defense is subject to summary disposition.

The good faith defense can be resolved in a plaintiff's favor on summary judgment. *See Solis v. Hooglands Nursery, L.L.C.*, 372 Fed.Appx. 528, 530 (5th Cir. 2010) (affirming summary judgment for employees on good faith defense to liquidated damages) *Bolick v. Mgmt. by Skylane, LLC,* No. H-07-2261, 2008 WL 4589961, at *2 (S.D. Tex. Oct. 14, 2008) (Smith, Mag.) (granting summary judgment on same grounds).

### 2.    The evidence shows Nine is not entitled to the good faith defense.

### 2.1.    Nine has no training or knowledge on the FLSA.

No one in Nine's management had a remote understanding of the FLSA and the responsibilities it imposes. Green, Nine's Vice President, and Barbot, a Regional Manager, set up the pay scale for employees, including Morley. Ex. A, Green Depo, at 7:12-15. Yet Green had never even heard of the FLSA until after Nine was sued:

```
               6
24    Q.  Tell me what the Fair Labor Standards Act is.
25     A.  I have no idea.
```

Ex. A, Green Depo, at 6:24-25. And Barbot still has no idea what the FLSA is:

```
              15
6    Q.  What is the Fair Labor Standards Act?
7     A.  I don't know.
```

Ex. B, Barbot Depo, at 15:6-7. Of course then, neither Green nor Barbot had any

background or training on the FLSA. *Id.* at 15:2-15:5. And even outside of the FLSA,

Green had done nothing to determine whether or not the pay scale that he and Barbot

established complied with the law:

```
                 65
 9    Q.  Did you do anything at all to determine
 10   whether or not you were paying your people in accordance
 11   with the law?
 12       A.  No.
```

Ex. A, Green Depo, at 65:9-12.

Since Nine didn't do anything to analyze the FLSA, its position that it considered

Morley subject to any exemption is a fiction created solely for this litigation. In fact,

Green and Barbot don't even know what an exemption or what the standards for

exemption are:

```
                 15
 12   Q.  Do you know what it means to be exempt from
 13   the Fair Labor Standards Act?
 14       A.  I don't know.
```

Ex. B, Barbot Depo, at 15:12-14.

```
                 26
 9    Q.  Do you know what the Motor Carrier Act
 10   exemption is?
 11       A.  No idea.
 12       Q.  Do you know what the executive exemption is?
 13       A.  No idea.
 14       Q.  Do you know what the administrative exemption
 15   is?
 16       A.  No.
 17       Q.  Do you know what the highly compensated
```

```
18   exemption is?
19      A.   No.
20      Q.   Did you take any of those exemptions into
21   account when you were deciding that you weren't going to
22   pay overtime to your field technicians?
23      A.   I don't know of those exemptions, so no.
```

Ex. A, Green Depo, at 26:9-23.

Nine has no evidence that it acted in good faith in failing to pay Morley overtime

required overtime under the FLSA. Indeed, the evidence shows the contrary is true.

Morley is entitled to summary judgment on good faith and liquidated damages.

**3.      Nine has failed to raise a genuine dispute regarding its highly compensated or administrative exemptions.**

**3.1.      Exemptions are construed narrowly against the employer.**

The FLSA's remedial and humanitarian purpose is to provide a minimum

standard of living necessary for the health, efficiency, and general well-being of

workers, as well as to prescribe certain minimum standards for working conditions.

*Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090, 1094 (5th Cir. 1973), *cert. denied*, 414 U.S. 855

(1973); *Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 443, 446 (E.D. Tex. 2004).

Employers seeking to rely upon an exemption bear the burden of proof to establish

the exemption. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir.1999).

Exemptions are narrowly construed against employers, and their application is limited

to those employees who "plainly and unmistakably" fit within their terms and spirit.

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Based upon the evidence before

the Court, Morley does not fall "plainly and unmistakably" into the highly compensated

or administrative exemption. And Nine has no evidence to the contrary.

### 3.2.   Blue collar workers are not eligible for any white collar exemptions.

The highly compensated and administrative exemptions "do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy." 29 C.F.R. §§ 541.3(a), 541.601(d). "Such nonexempt 'blue collar' employees gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists." 29 C.F.R. § 541.3(a). "Thus ... **non-management employees** in maintenance, construction and similar occupations such as ... operating engineers ... and laborers are entitled to ... overtime premium pay under the Fair Labor Standards Act, and **are not exempt ... no matter how highly paid they might be**." *Id.* (emphasis added).

### 3.3.   Morley is a blue collar employee.

Nine's field technicians, like Morley, need only a high school diploma or GED. Ex. C, Peterson Depo, at 73:24-74:1; Ex. A, Green Depo, at 24:4-6; Ex. B, Barbot Depo, at 57:1-2. Nine did not require any formal training for field technicians, who instead receive on-the-job training in the field by following other field technicians. Ex. B, Barbot Depo, at 57:21-58:2. Morley has only a GED, did not graduate high school, and has no formal schooling or college. Ex. D, Morley Depo, at 50:7-51:19. His only additional

education consists of on-the-job training. *Id.*

Morley's job as a field technician was physically demanding. He worked outside, even in cold and freezing weather. Ex. D, Morley Depo, at 131:23. His work left him "greasy and oily and dirty and sweaty." *Id.* at 131:22-23. Morley's work clothes included flame resisting clothing and steel-toed boots. Ex. C, Peterson Depo, at 124:20-25. In order to complete his jobs, Morley worked with downhole tools and used basic hand tools such as screwdrivers, wrenches, and clamps. *Id.* at 82:10-23. Morley's job involved constant physical demands. For example, he had to lift frac sleeves weighing 75 to 120 pounds. Ex. D, Morley Depo, at 96:19-21. And he often carried isolation tool systems, which weighed 200 to 300 pounds, to and from the job site. *Id.* at 64:24-66:2.

Because Morley was a decidedly blue-collar worker, Nine has no evidence that he is even eligible for the white-collar exemptions it seeks to assert.

### 4.   Nine cannot meet its burden under the administrative exemption.

Under the administrative exemption, an employee is exempt from the overtime provisions of the FLSA only if they are employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200. So to prevail on its administrative exemption defense, Nine bears the burden of showing that: (1) Morley was compensated on a salary basis of not less than $455 per week; (2) Morley primarily performed office or non-manual work directly related to management policies or general business operations for Nine or its customers; and (3) Morley regularly exercised of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.

Even if Morley concedes the first element, Nine cannot carry its burden of proof under either of the second two elements, and this inapplicable defense should be dismissed.

### 4.1.   Morley's primary duties related to production.

"To qualify for the administrative exemption, an employee's **primary duty** must be the performance of work **directly related to the management or general business operations** of the employer or the employer's customers." 29 C.F.R. § 541.201(a) (emphasis added).

"[P]rimary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "As a general rule, an employee's 'primary duty' involves over 50% of the employee's work time." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). The determination of the employee's primary duty is based upon "all the facts in a particular case, with an emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a); *see Lott*, 203 F.3d at 331 ("[F]lexibility is appropriate when applying this rule, depending on the importance of the managerial duties as compared with other duties, frequency of exercise of discretionary power, freedom from supervision, and comparative wages.").

To do work directly related to the management or general business operations of the employer, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a); DOL, WAGE & HR. DIV., Adm'r Interp. No. 2010-1, at *2 (Mar.

~ 9 ~

24, 2010). The regulations provide specific examples of qualifying activities:

> Work related to management or general business operations of an employer includes work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b). As these "functional areas" make clear, the administrative "exemption is intended to be limited to those employees whose duties relate to the administrative as **distinguished from the production operations of a business**." 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (quotations omitted) (emphasis added). "Thus, [the administrative exemption] relates to employees whose work involves **servicing the business itself** …." *Id.*; *see also* DOL, Adm'r Interp. No. 2010-1, at *3 (Mar. 24, 2010) ("'This production versus administrative dichotomy is intended to distinguish between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself.'" (quotations omitted)); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 525 (2d Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) ("The distinction [the dichotomy] draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities,

whether goods or services, that the enterprise exists to produce and market."); DOL, Wage & Hr. Op. Letter No. FLSA2005-21 (Aug. 19, 2005) (same).

That Morley was a production worker, not administrative staff, simply cannot be disputed. Morley was not part of Nine's management, did not manage any other employees, and did not perform office work. Ex. A, Green Depo, at 27:13-14, 33:14-17; Ex. B, Barbot Depo, at 88:3-5. Morley did not have an office, a desk, a cubicle, or a phone line, and did not ever even make it on Nine's building directory. Ex. A, Green Depo, at 27:13-14; Ex. C, Peterson Depo, 79:3-79:17. Peterson, Morley's supervisor, conceded that Morley spent the majority of his time working in the field, and that Morley's time in the field could be as high as 95 percent or more. *See* Ex. C, Peterson Depo, at 79:18-80:7. Nine has confirmed that Morley's job was to simply implement procedures given to him by management. Ex. B, Barbot Depo, at 101:19-101:24. Morley was simply not part of Nine's management. *Id.* at 67:25-68:1.

This Court's decision in *Diller v. Sunoco Partners, L.L.C.*, is instructive. No. 4:05-cv-03693, Doc. 74 (S.D. Tex. Aug. 9, 2007) (Smith, Mag.), *adopted* Doc. 76 (Hittner, J.). There, the Court denied summary judgment in favor of a pipeline business on the administrative exemption, where the company alleged the exemption applied toward pipeline controllers who "directly controlled the movement of crude oil and other produced from one location to another." *Id.* at 9. The Court explained that the question was not whether the employee's work was "central" to the business—but instead that

the employee's job was analogous to a production position, rather than administering the business affairs of the business. *Id.* at 7-9. The same is true here. As necessary as Morley may have been, his position was one of production, not administration.

The evidence shows that Morley's primary duties were completely unrelated to matters of management or general business operations of Nine or Nine's customers. For this reason, he does not fulfil this requirement of the Administrative Employee Exemption. And Nine has no evidence to the contrary.

### 4.2. Morley did not exercise discretion and independent judgment with respect to matters of significance.

To meet its burden under the administrative exemption, Nine must also show that Morley exercised discretion or independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(3).

"[T]he exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(c). It "implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(b). Employees exercise little or no discretion or independent judgment when, for example, they perform duties using the company's checklist, apply standards from company manuals, and issue recommendations, without the discretionary ability to resolve disputes. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed.Appx. 349, 352 n.l (5th Cir. 2015). Employees who are merely employing

"techniques and skills acquired by special training or experience" are not exercising discretion and independent judgment even if they "have some leeway in the performance of their work … within closely prescribed limits." *Clark v. Centene Co. of Tex., L.P.*, No. 15-50606, 2016 WL 3974099, at *3 (5th Cir. Jul. 22, 2016).

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). But it is not enough that an employer may suffer "serious consequences" (such as financial loss) if the employee fails to do the job properly. *Id.* § 541.202(f); *see also Dalheim*, 918 F.2d at 1331 ("[T]he fact that a worker's poor performance may have a significant profit-and-loss impact is not enough to make that worker an exempt administrator."). And the regulations likewise specifically provide that "an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer." 29 C.F.R. § 541.202(f).

Nine was clear that "the most important part of [Morley's] job"—running the tally—was "**not discretionary**." Ex. B, Barbot Depo. at 81:25-86:19 (emphasis added).[1] Moreover, field technicians like Morley did not have the liberty to negotiate contracts,

---

[1] It is easy to see why it **cannot** be discretionary. The task is to add up the measured lengths of pipe to make sure the technician is reaching a "certain" depth (that Morley must meet). Ex. B, Barbot Depo, at 83:2-86:19 ("Q. [Depth] is not a discretionary type of decision, is it? A. No, it's not discretionary. It needs to be done right.")

set policy, or create procedures for Nine. Ex. A, Green Depo, at 114:22-115:18. And

before Morley even went out on a job, he was given a packet with instructions drafted

by Nine's coordinators and approved by Nine's client's engineers. *Id.* at 120:2-21; Ex. C,

Peterson Depo, at 88:25-89:8. These job packets provided the procedural steps which

Morley was required to follow to complete a job. Ex. A, Green Depo, 31:21-32:4. Before

and during the job, Morley "is required to review and follow [sic] very extensive job

packet." Ex. C, Peterson Depo, at 89:7-8, 117:22-118:1 (explaining the job packet

contains "detailed instructions" that Morley was "required to follow"). In fact, Green

could not recall a single example where a field technician made a discretionary decision:

> 49
> 13      Q.   Okay.  Using that definition of discretion,[2]
> 14   can you identify a discretionary decision that a field
> 15   technician would make?
> 16      A.   I can't.

Ex. A, Green Depo, at 49:13-16. Morley was not even supposed to deviate from the

procedures without getting prior permission from Nine management and Nine's client.

Ex. A, Green Depo, at 32:5-33:1, 35:21-25. More than that, a diversion from the

protocols and procedures set forth in Morley's job packets could result in termination.

Ex. D, Morley Depo, at 165:24-166:6.

---

[2] Green offered the following definition of discretion: "Use your own discretion, use your own choices, your own -- whatever is in your mind, if you use your discretion." Ex. A, Green Depo, at 49:9-12.

The evidence shows that Morley was unable to exercise his judgment within the meaning of the administrative exemption. *See Diller v. Sunoco Partners, L.L.C.*, No. 4:05-cv-03693, Doc. 74 (S.D. Tex. Aug. 9, 2007) (Smith, Mag.) ("FLSA regulations make a distinction between an employee who utilizes still to implement well-established techniques, procedures or specific standards described in manuals, and an employee who exercises discretion and independent judgment."), *adopted* Doc. 76 (Hittner, J.). And—as Nine's own witness conceded—Nine has no evidence to show otherwise.

### 5.    Nine cannot sustain its highly compensated exemption defense.

A "highly compensated employee" for purposes of the FLSA's exemption from overtime compensation requirements, is an employee (a) with total compensation over $100,000 per year, (b) whose primary duty includes performing office or non-manual work, and (c) who customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt administrative, executive, or professional employee. 29 C.F.R. § 541.601(a), (d).

Although Morley does not dispute the compensation component of the highly compensated employee exemption, Nine cannot sustain its burden to show that Morley's primary duty was performing office or non-manual work, nor that he performed any one of the duties of an administrative, executive, or professional employee. Nine's highly compensated employee exemption fails as a matter of law.

### 5.1.    Morley's primary duties did not include office or non-manual work.

The highly compensated employee exemption "applies only to employees whose

primary duty includes performing office or non-manual work." 29 C.F.R. § 541.601(d).

"Thus, for example, non-management production-like workers and non-management employees in … occupations such as … mechanics, … craftsmen, operating engineers, … construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be." *Id.*

Morley's work was primarily physical in nature—greasy, sweaty, and dirty—with the vast majority of his time spent on oilfield well-sites. Ex. D, Morley Depo, at 64:24-66:2, 96:19-21, 131:23; Ex. C, Peterson Depo, at 79:24-80:2. In fact, Morley had no place to even do office work, such as a cubicle or even a basic desk. Ex. C, Peterson Depo, at 79:3-9; Ex. A, Green Depo, at 27:13-14. Even Morley's job description makes clear that he was "frequently exposed to oil and gas industry operational hazards" and would be "frequently required to stand; walk; use hands to handle/feel objects, tools, or controls; and reach with hands and arms." Ex. E, Job Descr.

Morley's job was not primarily (or even partly) performing office or non-manual work. On this count alone, Nine's defense fails. Nine has no evidence to show that Morley qualifies for the primary duties test of the highly compensated exemption.

### 5.2.   Morley did not perform any duties of an administrative employee.

Morley did not perform office or non-manual work directly related to Nine's management or general business operations that of its customers. Nor could he exercise discretion and independent judgment with respect to matters of significance while

performing his job. Because Nine's administrative exemption defense failed, Nine has cannot rely upon it to meet the highly compensated employee exemption.

### 5.3.   Morley did not fulfil the duties of an executive employee.

To meet its burden to rely upon the executive employee exemption, Nine must show: (a) Morley's primary duty was management of the enterprise in which he was employed or of a customarily recognized department or subdivision thereof; (b) Morley customarily and regularly directed the work of two or more other employees; or (c) Morley had the authority to hire or fire other employees or his suggestions and recommendations as to the change of status of other employees was given particular weight. 29 C.F.R. § 541.100(a)(2)-(4).

Nine's witness testimony is clear that Morley did not belong to Nine's management. Ex. B, Barbot Depo, 31:19-32:2; Ex. A, Green Depo, 33:14-33:17. In fact, as a field technician, Morley was at the very bottom of Nine's chain of command. Ex. B, Barbot Depo, at 90:20-24; Ex. C, Peterson Depo, at 57:12-22, 58:14-24.

Further, Morley did not customarily and regularly direct the work of at least two employees or their equivalent. Indeed, neither Barbot nor Peterson could not identify a single employee that Morley supervised. Ex. B, Barbot Depo, at 31:19-32:3, 33:14-16; Ex. C, Peterson Depo, at 60:17-19; *see also* Ex. A, Green Depo, at 68:4-9 (conceding that Morley did not direct the work of other employees).

And finally, Morley also had no authority to hire or fire other employees, and he did not give suggestions and recommendations that would be given particular weight as

~ 17 ~

to any other change of status of Nine's employees. Ex. C, Peterson Depo, at 59:18-60:4; Ex. B, Barbot Depo, 32:4-33:13.

Clearly, there is no evidence that Morley meets any one of the categories under the executive exemption to entitle Nine to claim the highly compensated exemption.

### 5.4.    Morley does not qualify for the professional exemption.

Individuals employed in a "bona fide professional capacity" are exempt from FLSA coverage.  29 U.S.C. § 213(a)(1). To qualify for the professional exemption, an employee must be one whose primary duty is the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized knowledge or instruction. 29 C.F.R. § 541.300.

The "primary duty" element of the professional exemption requires: (1) the employee perform work requiring advanced knowledge, including the consistent exercise of discretion and judgment; (2) advanced knowledge must come from a field of science or learning; and (c) advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.301(a).

The professional exemption is limited to positions where a standard prerequisite for the job requires specialized academic training. 29 C.F.R. § 541.301(d). But more than that, "If a job does not require **knowledge customarily acquired by an advanced educational degree**—as for example when many employees in the position have no more than a high school diploma—then, regardless of the duties performed, the employee is not an exempt professional under the FLSA." *Young v. Cooper Cameron Corp.*,

586 F.3d 201, 206 (2d Cir. 2009) (emphasis altered from original). So the exemption is not available for occupations that "customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes." 29 C.F.R. § 541.301(d). The exemption does not apply where most employees acquired skill through experience rather than advanced specialized intellectual instruction. *Id.* Even if some employees have more advanced degrees or certifications, "the Court's focus in analyzing the availability of the learned professional exemption is on **the minimum requirements for the job**." *Clark v. Centene Co. of Texas, L.P.*, 44 F.Supp.3d 674, 680 (W.D. Tex. 2014) (emphasis added), *aff'd* No. 15-50606, --- Fed.Appx. ----, 2016 WL 3974099 (5th Cir. Jul. 22, 2016); *Arasimowicz v. All Panel Sys., LLC*, 948 F.Supp.2d 211, 221 (D. Conn. 2013) (same); s*ee also Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1565 (11th Cir. 1991) ("[T]he determinative factor is the job requirement and not the education in fact acquired by the employee."); *Debejian v. Atlantic Testing Labs., Ltd.*, 64 F.Supp.2d 85, 88-89 (N.D.N.Y. 1999) (concluding the plaintiff was not professionally exempt because the proper focus is the requisites for the position not whether the plaintiff himself had advanced certifications and degrees).

"The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." 29 C.F.R. § 541.301(d). Occupations requiring only a four-year degree in any field, an associate's degree, or completion of a

specialized-training short course as a standard prerequisite for entrance into the field do not qualify for the learned professional exemption.  69 Fed. Reg. 22150 (Apr. 23, 2004); U.S. DEPT. OF LABOR, Op. Ltr. FLSA2008-10NA (Jun. 9, 2008) (opining that service coordinator position did not require advanced knowledge customarily acquired by prolonged specialized instruction when academic prerequisite was an associate's degree); *see also Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001) (holding learned professional exemption was not satisfied where paramedics and emergency medical techs only had to complete 880 and 200 hours of specialized training, respectively).

Here, Morely worked as a Field Technician despite having only a GED. Ex. D, Morley Depo, at 50:10-13. And Nine's descriptions for the Field Technician position at issue requires only a high school diploma or GED. Ex. E, Job Descr. In fact, the only training Morley ever received was on-the-job. Ex. D, Morley Depo, at 50:7-51:19. So not only does Nine have no evidence demonstrating Morley meets the professional exemption, but the evidence confirms he does not meet the exemption. Nine cannot rely on it to meet the highly compensated exemption.

## D.   CONCLUSION

Nine has no evidence its affirmative defenses of good faith, highly compensated exemption, or administrative exemption. The evidence actually contradicts these defenses. In either event, each affirmative defense fails as a matter of law.  The Court should dismiss these defenses with prejudice and award Morley liquidated damages.

Respectfully Submitted,

**BRUCKNER BURCH PLLC**

> ***/s/ Matthew S. Parmet***

By: _____

> Richard J. (Rex) Burch
> Texas Bar No. 24001807
> S.D. Tex. No. 21615
> Matthew S. Parmet
> Texas Bar No. 24069719
> S.D. Tex. No. 1076547

**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Telecopier:   (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
S.D. Tex. No. 27157
Jessica M. Bresler
Texas State Bar No. 24090008
S.D. Tex. No. 2459648
1150 Bissonnet
Houston, Texas 77005
**FIBICH, LEEBRON, COPELAND,
   BRIGGS & JOSEPHSON**
Telephone:   (713) 751-0025
Telecopier:   (713) 751-0030
mjosephson@fibichlaw.com
jbresler@fibichlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

On August 1, 2016, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet